JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

ALANA ST. AUDE
Law Clerk

450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102
Telephone: (415) 436-6809
Facsimile: (415) 436-7234
wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER M. SHAW, <br><br> Defendant. | CR. No. 08-0302 MAG <br><br> UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE <br><br> Hearing Date: July 23, 2008 <br> Time:  10:30 a.m. <br> Judge:  Hon. Edward M. Chen <br><br> SAN FRANCISCO VENUE |

**I. INTRODUCTION**

On May 7, 2008, the United States filed an Information charging Alexander M. Shaw ("Shaw" or " the defendant") with a violation of Title 36, Code of Federal Regulations, Section 4.23(a)(1), Driving Under the Influence of Alcohol, a Class B Misdemeanor, and a violation of Title 36, Code of Federal Regulations, Section 4.23(a)(2), Operating a Motor Vehicle with a Blood Alcohol Content over 0.08%. Shaw contends that Officer Gerald Michael ("Officer Michael") violated his Fourth Amendment rights by stopping him without reasonable suspicion

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG  1

1  that he had been, was presently, or was about to become engaged in criminal activity and
2  therefore all evidence collected after the stop should be suppressed. Defendant's contentions are
3  incorrect and his motion to suppress should be denied. Officer Michael had a legal basis for
4  conducting a traffic stop of the defendant's vehicle. Officer Michael was aware of "specific,
5  articulable facts" which formed the basis for suspecting that the defendant was driving under the
6  influence. The facts that demonstrate reasonable suspicion are: (a) Susie Sargent ("Sargent")
7  told Officer Michael that the defendant and another man had had too much to drink and that she
8  was afraid they might try to drive; (b) Officer Michael observed the defendant and another man
9  laughing and pointing at his police cruiser; (c) Officer Michael observed the defendant walking
10 with an unsteady gait; (d) Officer Michael observed Shaw knock over the boxes of wine he was
11 carrying to the car, reflecting a loss of motor skills; (e) Officer Michael observed the two men
12 leaving a wine event; (f) Officer Michael observed the two men loading boxes of wine into a car
13 which he shortly thereafter observed being driven; and (g) the driver was one of the men that the
14 witness had indicated had too much to drink.

## II. STATEMENT OF FACTS

16 On March 16, 2008, Officer Gerald Michael ("Officer Michael") was on duty at Fort
17 Mason. *See* Declaration of Officer Gerald Michael, attached hereto as Exhibit A, at ¶ 2. Susie
18 Sargent ("Sargent") flagged Officer Michael down at approximately 4:25 p.m. *See* Ex. A at ¶ 3.
19 Sargent was supervising the Rhone Rangers wine event at the Festival Pavilion at Lower Fort
20 Mason. *See* Declaration of Susie Sargent, attached hereto as Exhibit B, at ¶ 2. Sargent pointed
21 out two males leaving the wine event to Officer Michael. *Id*. at ¶ 7. She said that the men had
22 had too much to drink and that she was worried they might try to drive. *Id*. Officer Michael
23 followed the two men in his fully-marked and equipped police cruiser while remaining
24 approximately thirty feet behind them. *See* Ex. A at ¶ 4. The men laughed and pointed at his
25 vehicle. *Id*. at ¶ 5. One of the men, later identified as Alexander M. Shaw ("Shaw" or "the
26 defendant"), was pushing a hand truck with stacked boxes. *Id*. at ¶ 6. The defendant swayed
27 back and forth and knocked all the boxes to the ground. *Id*. The two men loaded the boxes into
28 a blue Mazda (CA plate No. 4FUZ070) and then returned to the Festival Pavilion. *Id*. at ¶ 7-8.

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG  2

1   Michael parked his police cruiser at the exit gate of the Pavilion. *Id.* at ¶ 9.  Approximately
2   five minutes later, he observed a Mazda approaching the exit. *Id.* at ¶ 10.  He noticed that the
3   license plate number matched the plate from the parked Mazda (CA plate No. 4FUZ070) he had
4   observed earlier. *Id.*  Officer Michael activated his overhead lights and siren and initiated a
5   traffic stop of the Mazda. *Id.* at ¶ 11.  The vehicle turned right and came to a stop in front of
6   building B. *Id.* at ¶ 12.

7   As Officer Michael approached the vehicle, he recognized the driver as the man who he had
8   seen pushing the hand truck, swaying back and forth, and knocking boxes to the ground. *Id.* at ¶
9   13.  Officer Michael contacted the driver and identified him as Alexander M. Shaw by his
10  California Driver's License. *Id.*  Officer Michael smelled a strong odor of alcohol on Shaw's
11  breath as Shaw spoke. *Id.* at ¶ 14.  He noted that Shaw spoke with a slur and a thick tongue. *Id.*
12  He asked Shaw if he had anything to drink and Shaw replied, "Yes, I had wine at the event." *Id.*

13  Officer Michael asked Shaw to exit his vehicle for a series of Field Sobriety Tests ("FSTs")
14  to demonstrate his ability to safely operate a vehicle. *Id.* at ¶ 15.  Shaw consented and Officer
15  Michael administered several field sobriety tests which Shaw failed. *Id.*  Officer Michael also
16  conducted two Preliminary Alcohol Screening tests which recorded that Shaw's Blood Alcohol
17  Content levels ("B.A.C.") were .10 and .11 percent, respectively. *Id.*  Officer Michael then
18  placed Shaw under arrest for Operation of a Motor Vehicle while Under the Influence of
19  Alcohol or Drugs. *Id.* at ¶ 16.

20  Shaw was transported to Park Police Headquarters for processing. *Id.* at ¶ 17.  At the
21  station, an Intoxilyzer test was conducted on Shaw. *Id.*  The Blood Alcohol Content of these
22  samples were .148 and .150 percent. *Id.*  Officer Michael issued Shaw citations for 36 C.F.R.
23  §4.23 (a)(1) and 36 C.F.R. §4.23(a)(2), Driving Under the Influence of Alcohol and released
24  Shaw. *Id.* at ¶ 18.

25  **III. ARGUMENT**

26  **A. Officer Michael Had Reasonable Suspicion to Conduct a Traffic Stop of the
        Defendant's Vehicle.**
27

28  The Fourth Amendment of the United States Constitution guarantees that individuals have

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG   3

1  the right to be protected from "unreasonable searches and seizures." U.S. Const. amend IV. The
2  level of reasonableness required by the Fourth Amendment for any particular search or seizure
3  depends in part on the level of the person's legitimate expectation of privacy in the place or
4  thing being searched, and in part on the level of intrusiveness of the search or seizure. *United*
5  *States v. Shyrock*, 342 F.3d 948, 978 (9th Cir. 2003) (citing *Minnesota v. Carter*, 525 U.S. 83, 88
6  (1998)). A detention or seizure of a person occurs "when the officer, by means of physical force
7  or show of authority, has in some way restrained the liberty of a citizen." *Desyllas v. Bernstine*,
8  351 F.3d 934, 940 (9th Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

9  "[T]he police can stop and briefly detain a person for investigative purposes if the officer
10 has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'
11 even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Reid v.*
12 *Georgia*, 448 U.S. 438, 440 (1980) (per curiam); *Terry v. Ohio*, 392 U.S. 1 (1968); see also *U.S.*
13 *v. Place*, 462 U.S. 696, 702 (1983). "[T]he level of suspicion required for a *Terry* stop
14 [reasonable suspicion] is obviously less demanding than probable cause." *Sokolow,* at 7.
15 Whether an officer has reasonable suspicion depends on the totality of the circumstances, taking
16 into account the specific, articulable facts along with the rational inferences to be drawn from
17 the facts. *United States v. Rocha-Lopez*, 527 F.2d 476, 477 (9th Cir. 1975). Moreover, the facts
18 giving rise to the "reasonable suspicion" are measured against an objective reasonable person
19 standard and not by the subjective impressions of the particular officer. *Id*. Probable cause, the
20 higher level of justification for a seizure, exists when, "under the totality of the circumstances
21 known to the arresting officers, a prudent person would have concluded that there was a fair
22 probability that [the suspect] had committed a crime." *United States v. Buckner*, 179 F.3d 834,
23 837 (9th Cir. 1999) (internal quotation marks omitted).

24     Here, one of the specific, articulable facts providing the reasonable suspicion for Officer
25 Michael to stop Shaw's vehicle is: (1) an identified informant provided a detailed tip to the
26 police that a crime might occur; (2) the police officer verified the informant's tip with his own
27 observations; and (3) under the balancing test, the need for immediate police action outweighed
28 the intrusion and inconvenience of the stop. *United States v. Davis*, 459 F.2d 458, 459 (9th Cir.

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG   4

1972) (citing *Terry*, 392 U.S. at 88). Finally, contrary to the defendant's contention, reasonable suspicion–not probable cause–is needed to institute a traffic stop. *United States v. Ibarra*, 345 F.3d 711, 713 (9th Cir. 2003).

### 1. Officer Michael Received a Detailed and Reliable Tip From a Citizen Informant that Defendant May Attempt to Drive Under the Influence of Alcohol.

In *United States v. Terry-Crespo*, an informant called 911 to report that a man had threatened him with a handgun. *United States v. Terry-Crespo*, 356 F.3d 1170, 1172 (9th Cir. 2004). The informant described the suspect to the 911 operator and also explained that the suspect threatened him in a high crime area of Oregon. *Id*. Although the informant did not correctly spell his name to law enforcement nor provide his telephone number, the court found that the informant was sufficiently reliable to support a finding of reasonable suspicion. *Id*. Because the informant risked the suspect discovering his identity by contacting 911, the call concerned a contemporaneous emergency event, the caller risked the possibility of criminal sanction for making a false report, and the call demonstrated that the victim had firsthand information, the Court held that based on the totality of the circumstances test, the police had reasonable suspicion to stop the defendant. *Id*. at 1176.

In the present situation, greater evidence exists than in *Terry-Crespo* to demonstrate that Susie Sargent's ("Sargent") tip was reliable. First, Sargent, a Logistics and Volunteer Coordinator with the Rhone Rangers, flagged down Officer Michael. Ex. B at ¶ 1, 7. She pointed out two white males to the officer, said they had too much to drink and that she was worried that they might try to drive. *Id*. Second, in contacting the officer, Sargent went beyond the call of her civic duty and placed herself at risk of danger to inform the police that the defendant was going to commit a crime. Third, like the caller in *Terry-Crespo*, Sargent was reporting about a contemporaneous emergency event–that she believed that Shaw's ability to drive may be so impaired that he could cause an accident that could potentially injure or kill another person. Fourth, since Sargent pointed the defendant out to Officer Michael in person, it was easier for him than it was for the officers in *Terry-Crespo* to verify that he stopped the correct vehicle. Because the informant personally identified the suspect, her tip was more

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG  5

detailed and reliable than the tip in *Terry-Crespo*.

### 2. Officer Michael Verified the Informant's Tip With His Own Objective Observations of the Defendant's Behavior.

In *Alabama v. White*, law enforcement officers received an anonymous tip that a crime was going to occur. *Alabama v. White*, 496 U.S. 325 (1990). The police officers verified the tip by checking that the suspect left from the building the informant had told them about, that the suspect left the building within the time frame that the informant said she would, and that the suspect was driving en route to a particular hotel. *Id.* at 331. The court held that although the police officers failed to verify every single aspect of the tip, the information they did verify provided the "objective justification" under the Fourth Amendment to give them reasonable suspicion. *Id.* at 329-31. Furthermore, even if the defendant's actions were seemingly innocent if considered separately, the fact that together they could have amounted to a crime justified the reasonable suspicion. *Id.* The court found it significant that the tip described not only present behavior, but also predicted future actions of the suspect. *Id.* at 332.

Officer Michael, like the officers in *White*, corroborated the information from Sargent before stopping the defendant. After Sargent contacted Officer Michael, he closely followed the two men in his marked police cruiser. Ex. A at ¶ 4. He observed the two men laughing and pointing at his vehicle. *Id.* at ¶ 5. He witnessed the defendant swaying back and forth and then knocking all of the boxes to the ground. *Id.* at ¶ 6. An unsteady gait is one of the common indicators to law enforcement officers that someone is under the influence of alcohol - it is noteworthy that many commonly employed Field Sobriety Tests ("FSTs"), including the Walk and Turn test and the One Leg Stand, test for balance, coordination and motor skills. If a person is swaying as they walk and then knocks something over, this suggests to law enforcement that an individual's balance, motor skills, and coordination may be compromised. The fact that the defendant was laughing and pointing at Officer Michael's patrol vehicle may also have indicated to Officer Michael that the defendant was intoxicated since alcohol can also affect judgment and social behavior. Officer Michael saw the men loading the boxes into a car. *Id.* at ¶ 7. This suggests that the defendant had control of and/or was the owner of the vehicle. Also, the men

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG   6

1  were leaving from a wine exhibition event.  Ex. B at ¶ 2.  About five minutes later, Officer
2  Michael witnessed the same car, into which the men had loaded the boxes, proceeding toward
3  the exit.  Ex. A at ¶ 10.  These points among others amount to the "specific, articulable facts"
4  which formed the basis for Officer Michael to stop the vehicle.  *United States v. Hernandez-*
5  *Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989).

### 3. Under the Balancing Test, the Exigency of The Situation Required Immediate Police Action.

The Supreme Court in *Davis* announced that to determine whether a particular stop is reasonable under the Fourth Amendment, "the need for police action must be balanced against the intrusion and inconvenience occasioned by the stop." *United States v. Davis*, 459 F.2d at 459 (9th Cir. 1972).  Among the factors to be considered in this analysis are "the seriousness of the suspected offense, the need for immediate police work and the need for preventive action." *Id.*  Officers may temporarily detain a subject based on reasonable suspicion not amounting to probable cause because such detentions are "limited intrusions . . . justified by special law enforcement interests." *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

The intrusion and inconvenience of a traffic stop are minimal, as evidenced by the lesser Fourth Amendment protections afforded automobiles as compared to homes.  *California v. Acevedo*, 500 U.S. 565, 569 (1991).  An officer may stop a vehicle on a highway if the officer has reasonable suspicion that the driver has violated a traffic law or is unlicensed.  *Delaware v. Prouse*, 440 U.S. 648, 669 (1979).  Based on his observations, Officer Michael had reasonable suspicion that Shaw was violating the law that prohibits driving under the influence of alcohol.  The seriousness of the suspected offense was great because drunk driving can kill others if it results in a car accident.  Officer Michael had to act quickly and stop the vehicle before Shaw injured himself or others.  Based on the strong law enforcement interest in preventing drunk driving, Officer Michael was justified in pursuing a traffic stop of Shaw's vehicle once he had reasonable suspicion that Shaw was driving under the influence of alcohol or drugs.

//

//

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG   7

### 4. Probable Cause is Not Necessary to Conduct a Traffic Stop Under the Fourth Amendment.

In Defendant's Motion to Suppress Evidence, defendant contends that *Prouse* stands for the proposition that unless the officer has probable cause to believe that the defendant was violating a traffic or equipment regulation, or committing some other criminal offense, the initial detention of the defendant violates the Fourth Amendment. (Def.'s Mot. to Suppress Evidence 3:6-10, June 25, 2008 (citing *Prouse*, 440 U.S. 648 (1979)).) The defendant is misconstruing the holding of *Prouse*. *Prouse* does not state that probable cause is needed to conduct a traffic stop. In *Prouse*, a police officer stopped a car to check for registration and observed marihuana in plain view on the car floor. *Id.* at 650. The court in *Prouse* held that to stop a vehicle, an officer must have an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered" *or* that the vehicle has violated some law. *Id*. at 663. Officer Michael did not need probable cause to stop Shaw's vehicle since it is well established in the case law that "police may make an investigative traffic stop based on 'reasonable suspicion.'" *Ibarra*, 345 F.3d at 713 (9th Cir. 2003) (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)). Furthermore, the case at bar is distinguishable from *Prouse* because in *Prouse*, the officer had no reason for initially stopping the vehicle. 440 U.S. at 648. The officer had observed no traffic or equipment violations and no suspicious activity. *Id*. The officer also did not stop the vehicle pursuant to any routine spot check. *Id*.

Officer Michael did not stop Shaw's vehicle to check registration, but because he had reasonable suspicion to believe that Shaw was violating a traffic regulation or committing a criminal offense–that of Driving under the Influence of Alcohol, 36 C.F.R. § 4.23(a)(1). First, Susie Sargent informed Officer Michael that she believed Shaw and his passenger were under the influence when she witnessed them acting in ways that caused her to believe that they were drunk. They were speaking too loudly for the setting in which they were located. Ex. B at ¶ 4. Reasonable suspicion has been found where a 911 caller reported a crime to law enforcement authorities, but did not clearly identify himself and did not provide contact information. *Terry-Crespo*, 356 F.3d at 1172-1173. Susie Sargent has been identified and therefore has greater

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG   8

verification and reliability than the caller in *Terry-Crespo*, especially since she placed herself at risk of a suit for fraud if she happened to be lying to the police. *See also id*. at 1176 (in weighing the reliability of the tip, a court considers factors such as whether the informant places his anonymity at risk and whether the informant risks criminal sanction for making a false report to the police). Second, the two men were leaving from a wine event. Third, Officer Michael himself observed the defendant display signs of intoxication *prior* to instituting the traffic stop. Officer Michael observed Shaw swaying as he walked to the car and knocking boxes over. Ex. A at ¶ 6. Officer Michael observed Shaw and Shaw's passenger laughing at his patrol vehicle. Ex. A at ¶ 5. Officer Michael observed Shaw put boxes into a vehicle that he saw being driven only a few minutes later. Ex. A at ¶ 7, 10. Based on his experience and training as a police officer, Officer Michael can reasonably be expected to recognize the signs of someone acting under the influence of alcohol. Once he observed these signs, he was justified in stopping the vehicle during the initial detention. At that point there was something "about the manner in which the vehicle was being driven or the vehicle operator's conduct" that established the objective basis upon which Officer Michael could stop the vehicle, namely the reasonable suspicion that the driver was operating the motor vehicle while under the influence of alcohol and was therefore a danger to the general public. Def.'s Mot. to Suppress Evidence 3:12.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's motion to suppress all evidence and statements arising from the encounter between Officer Michael and the Defendant.

Dated: July 9, 2008

                                                Respectfully Submitted

                                                JOSEPH P. RUSSONIELLO
                                                United States Attorney

                                                _____/s/_____
                                                WENDY THOMAS
                                                Special Assistant United States Attorney

UNITED STATES' OPP. TO DEFT'S
MOTION TO SUPPRESS, CR-08-0302 MAG   9

JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

ALANA ST. AUDE
Law Clerk

450 Golden Gate Avenue, 11th Floor
San Francisco, California  94102
Telephone:  (415) 436-6809
Facsimile: (415) 436-7234
wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. No. 08-0302 MAG |
| Plaintiff, ) | DECLARATION OF OFFICER GERALD MICHAEL |
| v. ) | Hearing Date: July 23, 2008 |
| ) | Time:   10:30 a.m. |
| ALEXANDER M. SHAW, ) | Judge:  Hon. Edward M. Chen |
| Defendant. ) | |

I, Gerald Michael, declare as follows

1. I am the arresting officer in the above-captioned case;

2. On March 16, 2008, I was patrolling the Fort Mason area;

3. At approximately 4:25 p.m., I was flagged down by Susie Sargent in front of the Festival Pavilion and she told me she had seen two men and was worried that those men had too much to drink and that they might try to drive;

MICHAEL DECLARATION         1
No. CR-08-0302

4. I followed the two men in my fully-marked and equipped police cruiser while remaining approximately thirty feet behind them;

5. I observed the men laughing and pointing at my vehicle;

6. One of the men was swaying back and forth as he pushed a hand truck with stacked boxes. He knocked all of the boxes to the ground causing the contents of the boxes to be strewn on the ground;

7. I observed the two men loading the boxes into a blue Mazda with a California license plate number of 4FUZ070;

8. The two men returned to the Festival Pavilion;

9. I positioned my police cruiser at the exit gate of the Festival Pavilion;

10. Approximately five minutes later, I observed a Mazda approaching the exit with license plate number 4FUZ070;

11. I activated my police cruiser overhead lights and siren and initiated a traffic stop of the Mazda;

12. The vehicle turned right and came to a stop in front of building B;

13. As I approached the vehicle, I recognized the driver as the man who I had seen pushing the hand truck, swaying back and forth and knocking boxes to the ground. Upon contact with the driver who I identified as Alexander M. Shaw by his California Driver's License;

14. I smelled a strong odor of alcohol on his breath as he spoke with a slur and a thick tongue. I asked Shaw if he had been drinking and he stated that he had consumed "wine at the event."

15. I administered several field sobriety tests. Shaw failed each one. I conducted a Preliminary Alcohol Screening test, which delivered readings of .10 and .11 percent B.A.C.;

16. I arrested Shaw for Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs;

17. Shaw was transported to Park Police Headquarters for processing. An Intoxilyzer

MICHAEL DECLARATION        2
No. CR-08-0302

           test was conducted on Shaw. The Blood Alcohol Content of the samples were .148 and .150 percent;

18.     I issued Shaw citations for violating 36 C.F.R. §4.23 (a)(1) and 36 C.F.R. §4.23(a)(2), Driving Under the Influence of Alcohol and released Shaw.

19.     I declare under penalty of perjury and according to the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

DATED: 7/2/08                         Respectfully submitted,

                                              /s/
                                     GERALD MICHAEL

MICHAEL DECLARATION         3
No. CR-08-0302

JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

ALANA ST. AUDE
Law Clerk

450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102
Telephone: (415) 436-6809
Facsimile: (415) 436-7234
wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. No. 08-0302 MAG |
| Plaintiff, ) | DECLARATION OF SUSIE SARGENT |
| v. ) | Hearing Date: July 23, 2008<br>Time: 10:30 a.m.<br>Judge: Hon. Edward M. Chen |
| ALEXANDER M. SHAW, ) | |
| Defendant. ) | |

I, Susie Sargent, declare as follows

1.  I am a Logistics and Volunteer Coordinator for the Rhone Rangers. The Rhone Rangers is a nonprofit trade association of Rhone varietal wine producers;

2.  On March 16, 2008, I was supervising the Rhone Rangers wine event for trade, media and wine producers at the Festival Pavilion at Lower Fort Mason;

3.  At approximately 4:25 p.m., I observed two men walking out of the Festival Pavilion toward the exit;

SARGENT DECLARATION
No. CR-08-0302

4. I heard the two men shouting so loudly that at first I feared they might be fighting;

5. I approached the two men and asked them, "Are you driving?" I told them that I was concerned that they might have had too much to drink. One of the men replied loudly, "We're fine!" He then brushed past me, kept walking and did not say anything else to me;

6. I observed the men carrying what I believed were boxes of wine and walk past a police officer standing outside;

7. I approached the police officer, pointed out the two men to the officer and told the officer that the men had too much to drink and that I was worried they might try to drive.

8. I declare under penalty of perjury and according to the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

DATED: 7/7/08                                   Respectfully submitted,


                                                _____/s/_____
                                                SUSIE SARGENT

SARGENT DECLARATION
No. CR-08-0302